IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EMORY CHILES,

      Plaintiff,

v.                          CIVIL ACTION NO. 5:11cv65
                              (Judge Stamp)

UNITED STATES OF AMERICA,

      Defendant.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On May 2, 2011, the *pro se* Plaintiff, Emory Chiles, filed this action under the Federal Tort Claims Act ("FTCA"). On June 3, 2011, the Plaintiff was granted leave to proceed *in forma pauperis*, and on August 29, 2011, he paid his required initial partial filing fee. On August 8, 2011, the undersigned made a preliminary review of this matter and determined that summary dismissal was not warranted. Accordingly, the Clerk was directed to issue 60 day summonses for the United States Attorney's Office for the Northern District of West Virginia and the Attorney General for the United States of America. On November 14, 2011, the Defendant filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, together with numerous exhibits and attachments. On November 16, 2011, a Roseboro Notice was issued, and on December 9, 2011, the Plaintiff filed a response.

### II. CONTENTIONS OF THE PARTIES

A. **The Complaint**

In the complaint, the Plaintiff asserts that while incarcerated at USP Hazelton[1] he was attacked, beaten, and stabbed by three other inmates.[2] More specifically, the Plaintiff alleges that on December 30, 2007, at some time prior to 8:00 p.m, Inmate C entered housing Unit B-2[3] although he was not assigned to live in that housing unit. The Plaintiff maintains that after entering Unit B-2, Inmate C along with Inmates A and B, entered his cell and threatened to kill him if he did not check into protective custody in the prison's Special Housing Unit. The Plaintiff further alleges that Inmate C "brandished an 'icepick-type knife" and one of the other two inmates pulled a "lock in a sock" from his pocket. The Plaintiff claims that because he feared for his life, he "verbally acceded to their demands." The Plaintiff then left his cell and entered the common area to discover that the Correctional Officer ("CO") working the unit was absent, "having abandoned his assigned duty station, leaving the housing unit unsupervised." The Plaintiff further alleges that because he could not report the incident to the CO, and because the three other inmates also realized the housing unit was unsupervised, he grabbed a nearby wooden mop handle and in defense of his life, struck Inmate A with a mop handle as Inmate A attacked him with the lock in a sock. The Plaintiff alleges that Inmate A struck him repeatedly in the head and shoulders with the lock causing him to fall to the

---

[1] Plaintiff is currently incarcerated at USP Coleman II with a projected release date of October 9, 2014.

[2] Although the Plaintiff has identified the three inmates by name and BOP number, the undersigned has chosen to refer to them as Inmate A, Inmate B, and Inmate C, in the same manner as the Defendant refers to them in its Memorandum.

[3] The undersigned notes that in some of the Defendant's supporting documentation, the unit is referred to as B-B. However, the undersigned has chosen to refer to the Plaintiff's housing unit as B-2 throughout this Report and Recommendation.

floor. Once he was on the ground, the Plaintiff alleges that Inmate B also struck him. The Plaintiff continues his complaint by stating that Inmate C then started stabbing him in the chest and abdomen with the icepick-type knife. He maintains that he was able to get to his feet but was stabbed several more times in the upper and lower back as he fled the housing unit with the other three inmates in pursuit. Upon entering the corridor outside the housing unit, the Plaintiff indicates that he found the Unit CO and informed him that he had been stabbed. The Plaintiff indicates that he initially was treated at the prison's Health Services Department, but later that night he was transported to West Virginia University Hospital for further care. The Plaintiff alleges the CO who was assigned to his housing unit was negligent by leaving the housing unit unattended for an undetermined but nevertheless extended period of time, which negligence resulted in the near fatal attack. Additionally, the Plaintiff alleges continued physical discomfort as well as symptoms associated with Post-Traumatic Stress Disorder. For relief, the Plaintiff requests that he be awarded damages in the amount of $500,000.00.[4]

## B. The Defendant's Motion

In the memorandum in support of its motion to dismiss or, in the alternative, for summary judgment, the Defendant argues that Plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the Defendants asserts:

(1) Plaintiff's FTCA claim fails because he cannot establish that the CO breached his duty

---

[4] The Plaintiff alleges that he filed an Administrative Tort Claim on September 29, 2009, which was denied on March 8, 2011. Although the Plaintiff did not submit copies of his claim or the rejection letter, the Defendant, in its Memorandum acknowledges the Plaintiff satisfied the administrative prerequisite to filing this complaint. Accordingly, the undersigned has assumed, for purposes of this Report and Recommendation that the Plaintiff properly exhausted his Administrative Tort Claim prior to filing this action.

of care; or that Plaintiff's injuries were proximately caused by the officer's actions.

(2) Plaintiff's own negligence bars his recovery.[5]

**C. The Plaintiff's Response**

In his reply, the Plaintiff argues that he has stated a claim for which relief can be granted. In support of that argument, the Plaintiff argues:

(1) The CO responsible for Plaintiff's housing unit breached the duty of care.

(2) The CO's negligence was the proximate cause of the Plaintiff's injuries.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

---

[5] It appears to the undersigned that the Defendant's claim of modified comparative negligence is a question of fact rather than a question of law. (Doc 30, p. 16). Therefore, the claim will not be addressed in this recommendation.

(2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id).  (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### III.  SUMMARY OF INCIDENT

The incident in question occurred on December 30, 2007, at USP Hazelton. On that date, the Plaintiff was assigned to Unit B-2 as were inmates A and B, while inmate C was assigned to Unit C-1. (Doc. 30-1, p. 3). On that date. approximately 120 inmates were assigned to Unit B-2, under the supervision of one correctional officer. (Doc. 30-1, p. 2). At approximately 8:10 p.m., Indoor Recreation Recall[6] began in the Red Corridor of Unit B-2. (Id.). During Indoor Recreation Recall, the front door of the unit is open, and the United States maintains that the officer working the unit

---

[6]Recreation Recall is an open movement where inmates return from recreation to housing units. (Doc. 20-1, p. 2).

stands in a position to supervise the movement. The Correctional Officer working the B-2 Unit was standing in the Red Corridor supervising the inmate movement, and his area of responsibility included the direct supervision of inmates walking in to Unit B-2, those already in the unit, as well as inmates passing through the corridor outside the unit. (Id.). At approximately 8:20 p.m., the B-2 Correctional Officer saw the Plaintiff come running out of the unit being chased by two other inmates. One minute later, a fourth inmate came out trying to get to Unit C-1. (Doc. 30-1, p. 12).

The incident in question was the subject of an SIS investigation. As part of that investigation, an officer monitored the ViconNet camera system for Unit B-2, and more particularly, for the date of December 30, 2007. According to the investigating officer, the images from the camera indicated that at approximately 8:21 p.m., the Plaintiff confronted inmate A in the middle of the B-2 unit in front of the stairs. The Plaintiff, in possession of a broken mop stick, was "enticing" Inmate A to engage in an altercation. Inmate A was exiting the stairs when the Plaintiff struck him with the broken mop stick. Inmate A responded by striking the Plaintiff with an unknown object in the upper torso area. At approximately 8:21:22 p.m., Inmate B began to assault the Plaintiff with an unknown object by striking him in the upper torso. At approximately 8:21:26 p.m., Inmate C proceeded to stab the Plaintiff in the upper torso area with an unknown object. After several seconds, the Plaintiff was able to remove himself from the housing unit where he was chased by Inmates A and B through the Red Corridor (Doc. 30-1, pp. 15-16).

## IV. ANALYSIS

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless

it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 and 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939). The burden is on the plaintiff to prove these elements by a preponderance of the evidence. Id. at 899; see also, Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). Therefore, the plaintiff must prove that the "defendant's breach of duty was more likely than not the cause of the injury." Murray at 463 (*quoting* Hurley v. United States, 923 F.2d 1091, 1094 (44th Cir. 19910); see also, Strahin v. Cleavenger, 603 S.E.2d 197 (W.Va. 2004)(stating that "no action for negligence will lie without a duty broken."). The United States, it appears, acknowledges that it owes a "duty" to keep prisoners safe and free from harm. However, it argues that the Plaintiff has failed to establish that it breached that duty and/or that it was the proximate cause of his injuries.

With respect to federal prisoners, the Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule. United

States v. Munitz, 534 F.2d 53, 53 (1963). Title 18 U.S.C. § 4042 defines the duty of care owed to a prisoner as, " the exercise of ordinary diligence to keep prisoners safe and free from harm." Jones v. U.S., 534 F.2d 53, 54 (5th Cir. 1976)). However, the BOP's duty towards the protection of prisoners is not the guarantee of "a risk-free environment." See Usher v. United States, 2010 WL 3721385 (E.D. Ky. Sept. 15, 2010).

In West Virginia, negligence is "always determined by assessing whether the actor exercised 'reasonable care' under the facts and circumstance of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W.Va. 2004). "A long standing premise of the law of [West Virginia] is that negligence is the violation of the duty of care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place manner, or person." Setser v. Browning, 590 S.E.2d 697, 701 (W.Va. 2003). Accordingly, the duty of care owed to an inmate under West Virginia law is consistent with Title 1 U.S.C. § 4042.

Although 18 U.S.C. § 4042 sets forth the mandatory duty of care, it does not direct how the duty is fulfilled. See Calderon v. U.S., 123 F.3d 947, 950 (7th Cir. 1997))finding the statute "sets forth no particular conduct that the BOP personnel should engage in or avoid while fulfilling their duty to protect inmates."). However, under the FTCA, in disputes between prisoners, it is clear that BOP employees could be negligent in their duty to protect prisoners if they "knew or reasonably should have known of a potential problem" between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

The United States contends that it cannot be liable for the Plaintiff's injuries because the Plaintiff did not advise USP Hazelton staff of a problem between him and the inmates, he did not

9

request segregation or protection from the inmates, and he provides no evidence that staff observed extraordinary incidents or group tension indicating a danger to the security of the Plaintiff. In making this argument, the United States cites <u>Artis v. Petrovsky</u>, 638 F.Supp. 51, 53 (W.D.Mo. 1986). That case is not dispositive because it is not binding precedent. Moreover, the undersigned does not believe that liability in this case is dependent upon whether members of Hazelton staff received an actual or particularized notice of danger to the Plaintiff. The Plaintiff is not alleging a constitutional tort, requiring him to show deliberate indifference, and therefore, actual notice of the danger to him. Because the FTCA renders the United States liable for negligently failing to protect a prisoner, negligence, in the opinion of the undersigned, includes failure to respond to a risk which a reasonable person would have known, whether or not he or she was actually apprised of it. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994)(an 8th Amendment claim for deliberate indifference requires actual notice; <u>Del Raine v. Williford</u>, 32 F.3d 1024, 1032 (7th Cir. 1994)(comparing constitutional and negligence standards).

  The Plaintiff contends that his unit CO "abandoned his post" and was negligent in allowing an inmate to enter a unit to which he was not assigned. He also alleges that the unit manager was negligent in allowing an inmate carrying a knife to pass through a metal detector.

  In response, and without any support, the United States maintains that the there exists no requirement during inmate moves that mandate the CO position himself in front of the unit door or elsewhere in the unit. However, a review of Program State 5500.12 makes clear that there are "Post Orders" which may, in fact, dictate the exact protocol the CO was to use during the recreation recall. Moreover, the Plaintiff, presumably, does not have access to those post orders. However, a review of pertinent case law establishes that at another USP, at least, "the post orders applicable to all

officers manning the general housing units at USP Lee...include the following mandate:

> The Unit Officer will remain inside the inner door of the Unit during controlled movements. This will deter any prohibited acts being committed while the movements are in progress. Once the movements are completed, the Officer may observe the the compound to ensure the approaching inmates be secured in their designated Housing Unit.[7]

In addition, the United States does not contest that Inmate C was not assigned to Unit B-2, nor does it contest that Inmate C stabbed the Plaintiff with an "unknown object." Moreover, the undisputed facts establish that the actual "physical assault" did not occur until the four inmates had made their way to the center of the B-2 Unit. Accordingly, the undersigned is of the opinion that the Plaintiff has set forth a scenario under which a reasonable person would anticipate that inmates were in danger and, the CO may have been negligent in preventing the scenario.

The United States also argues that the Plaintiff has failed to present evidence that it was the proximate cause of his injuries. As previously noted, under the FTCA, the law of the state where the alleged negligence occurred controls the analysis. 28 U.S.C. § 2674; Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991)("State law determines if there is an underlying cause of action"). "West Virginia law defines a proximate cause of an injury as one 'which, in natural and continuous sequence, produces foreseeable injury and without which the injury would not have occurred. Thus, the test requires both (1) foreseeable injury; and (2) but-for causation." Grant Thornton, LLP v. Federal Deposit Ins. Corp., 435 Fed.Appx. 188, 194 (4th Cir. 0211)(internal quotations and citation omitted); Aikens *v.* Debow, 541 S.E.2d 576, 581 (W.Va. 2000)("To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have reasonably

---

[7]Brembry v. United States, 2011 WL 12174, at *4 (W.D.Va. Sept. 19, 2011).

expected to produce an injury.")(internal citation omitted).

The Plaintiff alleges that the unit CO was the proximate cause of his injuries. More specifically, he alleges that had the CO not abandoned his post, Inmate C would not have gained entry into Unit B-2, where he did not belong, and additionally, when the four inmates arrived in the center of the unit, he could have alerted the CO.

In response, the United States again maintains, without any support, that the CO was correctly positioned in the corridor during recreation recall, and therefore cannot be said to have abandoned his post. In addition, the United States contends that the Plaintiff's injuries still would have resulted even had Inmate C not entered housing Unit B-2. In support of this contention, the United States suggests that because Inmates A and B were assigned to the Unit, and because the Plaintiff initiated the confrontation by striking Inmate A, Inmate A and B would still have carried out the assault on the Plaintiff. This is speculative, at best, and certainly does not provide an adequate basis for dismissing the Plaintiff's complaint at this time.

The United States also challenges the Plaintiff's claim that the CO was the proximate cause of his injuries by asserting that the Plaintiff's striking of Inmate A, operating independently of any other act, made it the proximate cause of his injury. The United States continues this argument by stating the intervening cause, the Plaintiff engaging in the prohibited act of striking Inmate A, severed any causal connection between the alleged improper action of allowing Inmate C's entrance into Unit B-2 and the Plaintiff's damages. However, "[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, **making it and it only**, the proximate cause of the injury." Harbaugh v. Coffinbarger, 543 S.E.2d 338, 345 (W.Va.

12

2000)(internal quotation omitted)(emphasis added). Therefore, the two acts of negligence must be unconnected and unrelated, i.e., the one cannot be foreseen to be the result of the other." See Grant Thornton, supra at 198. Here, assuming the CO was negligent, it seems foreseeable that the Plaintiff, faced with three inmates, two of whom were armed, would initiate a physical attack.

Finally, the United States argues that in a negligence action, any "willful, malicious, or criminal act breaks the chain of causation." Yourtee v. Hubbard, 474 S.E.2d 613, 620 (W.Va. 1996). The United States maintains there exist additional intervening causes – the willful and malicious striking and stabbing of the Plaintiff by the other inmates. However, Yourtee actually holds that such acts do not necessarily break the chain of causation:

> A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.[8]

Again, it is not clearly unforeseeable that inmates, armed with an icepick like object and a lock in the sock would use them to harm another inmate. Therefore, if the CO was negligent in performing his duties, thus allowing Inmate C to enter the Unit with an icepick like object and, further was unable to see the confrontation when the inmates reached the center of the Unit, the actions of the inmates would not relief him from his liability for the Plaintiff's injuries.

In summary, the Plaintiff has filed a complaint which alleges that his Unit CO was negligent in the performance of his duty station, and that said negligence was the proximate cause of his injuries. In addition, there is no dispute that the Plaintiff suffered serious injuries on the night of December 30, 2007, and those injuries were the result of a confrontation with other inmates, one of whom was clearly

---

[8] Yourtee at 621.

not in his assigned Unit. Accordingly, the complaint, viewed in the light most favorable to the plaintiff, is sufficient to survive the defendant's motion to dismiss. It give the defendant fair notice of his claims, and the grounds upon which it rests. Furthermore, with respect to the defendant's motion for summary judgment, it is clear that there are genuine issues as to materials facts, regarding the alleged negligence of the Unit CO, such that a grant of summary judgment at this early stage in the proceedings would be inappropriate.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss, or in the alternative for Summary Judgment (Doc. 29) be **DENIED**, and that a scheduling Order be entered.

Any party may file, within fourteen (14) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report

and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: June 22, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE