```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

EMORY CHILES,

      Plaintiff,

v().                                           Civil Action No. 5:11CV65
                                                       (STAMP)

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DECLINING TO ADOPT REPORT AND**
**RECOMMENDATION OF MAGISTRATE JUDGE AND**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

The plaintiff initiated this case by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., alleging that a Correctional Officer ("C/O") employed by the United States Penitentiary at Hazelton ("USP Hazelton" or "Hazelton"), negligently failed to protect him from an attack by three other inmates in his cell block at USP Hazelton on December 30, 2007. The plaintiff was granted leave to proceed in forma pauperis and the Clerk was directed to issue a summons. The United States filed a motion to dismiss or, alternatively, motion for summary judgment. A Roseboro[1] notice was issued and the plaintiff filed a timely responsive pleading.

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se petitioner of his right to file material in response to a motion for summary judgment).

II. Facts

In the complaint, the plaintiff alleges that on December 30, 2007, while incarcerated at USP Hazelton, he was assaulted, beaten and stabbed by three fellow inmates (Inmates A, B, and C) in his housing unit: Unit B-2. The plaintiff alleged that Inmate C, who did not reside in Unit B-2, entered the unit at roughly 8:00 p.m., and along with Inmates A and B, entered the plaintiff's cell brandishing weapons, and threatened to kill the plaintiff if he did not enter into protective custody in the Special Housing Unit ("SHU"). In response to this threat, the plaintiff asserts that he "verbally" agreed to enter the SHU, then fled his cell into the common area where he realized that the C/O for the unit was not present, allegedly "having abandoned his assigned duty station, leaving the housing unit unsupervised." He says that, at that time, realizing that the housing unit was unsupervised and fearing for his life, he grabbed a wooden mop handle and struck Inmate A in self-defense as Inmate A attacked the plaintiff with a "lock in a sock." The plaintiff alleges that Inmate A repeatedly struck him with the lock in a sock, causing him to fall; at which point the plaintiff says that Inmate B also attacked him, and Inmate C stabbed him in the chest and abdomen with an ice pick-type knife.

The plaintiff continues to assert that he was eventually able to get to his feet and flee, but that he was stabbed several more times as he did so. The plaintiff says that he then found the Unit C/O, who was positioned in the corridor outside of the housing unit

during a controlled move for recreation recall,[2] and notified him that he had been stabbed. The plaintiff was treated at the prison Health Services Department, and was later transported to West Virginia University Hospital. The plaintiff's complaint asserts that the Unit C/O negligently caused the attack by leaving the housing unit. He requests damages in the amount of $500,000.00 for his physical injuries, as well as for symptoms which he associates with post-traumatic stress disorder.

In response to the complaint, the United States filed a motion to dismiss or, alternatively, motion for summary judgment. In support of this motion, the United States argues: (1) the plaintiff cannot establish that the C/O breached any duty that he owed to the plaintiff; (2) the plaintiff cannot establish that the C/O's actions proximately caused the plaintiff's injuries; and (3) that the plaintiff's own negligence bars his recovery. The plaintiff filed a response in which he argues that he has successfully shown a breach of the C/O's duty of care, and that the C/O's negligence was the proximate cause of his injuries.

This matter was referred to United States Magistrate Judge John S. Kaull for a report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2. The magistrate judge issued a report and recommendation recommending that the

---

[2] "Recreation Programs are provided to keep inmates constructively occupied and to reduce idleness. Recreation Recall is the time when inmates return from recreation (i.e., education, programming, etc.)."  ECF No. 30 *3.

3

defendant's motion to dismiss, or alternatively, motion for summary judgment be denied and that the case be set for trial. The defendant filed timely objections. For the reasons set forth below, this Court must decline to adopt the magistrate judge's report and recommendation, and instead grant the defendant's motion for summary judgment and dismiss the plaintiff's complaint.

### III. Applicable Law

A. Review of the Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because objections have been filed in this case, this Court will undertake a de novo review.

B. Standard of Review for Motion for Summary Judgment[3]

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

---

[3]This Court's ruling is based upon its determination that summary judgment in favor of the defendant is appropriate. Accordingly, the standard of dismissal for a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is omitted from this opinion.

(1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed -- whether, in other words, "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (stating that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In reviewing the supported

5

underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

The FTCA waives the federal government's traditional immunity from suit for claims based on the negligence of its employees.  28 U.S.C. § 1346(b)(1).  The FTCA also "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred."  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).  Here, the plaintiff asserts a negligence claim against the United States with regard to the C/O's absence from the housing unit at the time that the plaintiff was allegedly assaulted.  In West Virginia, such a claim for negligence requires that the plaintiff establish all three of the following elements by a preponderance of the evidence: (1) that the allegedly negligent actor owed him a duty; (2) that the allegedly negligent actor negligently breached that duty; and (3) that the negligent breach of that duty proximately resulted in injury to the plaintiff.  Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W. Va. 1939).  In order to survive a motion for summary judgment, the plaintiff must present sufficient evidence of each of these elements so as to create a genuine issue of material fact as to that element.  Despite the magistrate judge's conclusion to the contrary, this Court finds that the plaintiff cannot meet this burden with regard to the second element of his negligence

claim, as he has not presented any evidence that the C/O, or anyone at Hazelton for that matter, had any reason to foresee the potential for an altercation between the plaintiff and Inmates A, B and C.

In his report and recommendation, the magistrate judge found, and this Court agrees, that "[t]he duty of care owed by the Federal Bureau of Prisons ["BOP"] to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." United States v. Muniz 374 U.S. 150, 164-65 (1963). The duty established by § 4042 is clear, and mandates "the exercise of ordinary diligence to keep prisoners safe and free from harm." Jones v. United States, 534 F.3d 53, 54 (5th Cir. 1976). However, prisons are dangerous places, and BOP personnel cannot be charged with a duty to guarantee a risk-free environment. Setser v. Browning, 590 S.E.2d 697, 701 (W. Va. 2003) ("[N]egligence is the violation of the duty of care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place manner, or person.") Consistent with this duty, the magistrate judge agreed, as Courts have consistently held, that BOP personnel can only be deemed negligent in violation of this duty when personnel "knew or reasonably should have known of a potential problem" between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

The plaintiff admits that he cannot present evidence to show that the Unit C/O, or anyone else at USP Hazelton, was aware of a

potential for violence between the plaintiff and Inmates A, B and C, because he states that he was not aware of this potential himself. ECF No. 36 *2-*3. However, he argues, this is immaterial because the C/O could nonetheless have been negligent in "abandoning his post" and allowing Inmate C to enter the housing unit where he did not reside, carrying a weapon.  The magistrate judge agreed, and found that the plaintiff had presented sufficient evidence to create an issue of material fact as to whether the C/O breached the duty of care that he owed to the plaintiff.  In support of this finding, the magistrate judge noted that, while the C/O clearly did not have actual knowledge of a heightened danger to the plaintiff posed by Inmates A, B and C because the plaintiff does not invoke a constitutional claim, such actual knowledge is unnecessary to create liability. Accordingly, the magistrate judge found, the plaintiff is only charged with showing that a reasonable, non-negligent person would have recognized the risk. See Del Raine v. Williford, 32 F.3d 1024, 1032 (7th Cir. 1994).

In this regard, the magistrate judge found that, because the plaintiff asserts negligence of the C/O in the form of "abandoning his post" and because the defendant has failed to present evidence in the form of "Post Orders" that the C/O did not so abandon, the plaintiff had created a genuine issue of material fact.  The magistrate judge found that a factual determination was necessary with regard to whether the C/O's absence from the housing unit constitutes a negligent violation of the C/O's duty of care to the

plaintiff in that a reasonable C/O should have recognized the risk in leaving the housing unit unattended.

This Court disagrees with the magistrate judge on this issue, and finds that the plaintiff has failed to create a genuine issue of material fact with regard to whether the C/O breached his duty to protect the plaintiff.  It is true, as the magistrate judge points out, that the plaintiff does not here allege constitutional claims, and so liability does not depend upon whether or not the C/O had actual knowledge of the potential for violence between the plaintiff and Inmates A, B and C.  However, courts have long found that some level of "reason to know" is necessary to impose liability for negligent violation of the duty to protect. Muniz v. United States, 280 F. Supp. 542, 547 (S.D.N.Y. 1968) (prison personnel possess a "duty to exercise reasonable care and diligence to protect the prisoner from danger, known or which might reasonably be apprehended by him."  No liability may be assessed "in the absence of a showing that he had reason to anticipate violence and failed to prevent it."); Turner v. Miller, 679 F. Supp. 441, 443-44 (M.D. Pa 1987) (even though plaintiff told officials that he feared for his life, plaintiff's complaint fails to show breach of duty, because plaintiff did not express fear of any particular inmate; thus, defendants had no reason to believe that attacker was a danger to plaintiff); and see Parrott, supra.

As stated above, the plaintiff admits that the C/O had no reason to believe that the risk of an incident between the

9

plaintiff and Inmates A, B and C was any higher than the general risk of an incident which exists in the prison environment. Further, it is clear from the filings provided by both sides that the C/O had positioned himself directly outside of the housing unit in order to monitor a period of controlled movement of the prisoners through the corridor following a recreation period. The plaintiff also admits that he was able to locate the C/O immediately upon leaving the housing unit and entering the outside corridor. ECF No. 1 *4 ¶ 13. Accordingly, there is no evidence presented to suggest that the C/O "abandoned his post." Rather, the evidence can only result in the conclusion that the C/O remained at the housing unit, but positioned himself in the area of greater congestion during the recreational recall move.[4]

Because the plaintiff admits that the C/O had no reason to recognize any heightened risk for violence in the housing unit, it cannot be said that the C/O should have been aware that stepping into the corridor to monitor the recreational recall move would result in any greater danger to the plaintiff than if he had remained in the unit. In fact, during movements like this, the defendant asserts that "a greater number of inmates are present in

---

[4]The magistrate judge cited post orders from another prison as evidence that the C/O may have violated post orders in stepping into the corridor during a controlled move. However, the sworn statement of Tracy Benton, the Correctional Services Lieutenant at USP Hazelton at the time of the incident, asserts that at Hazelton correctional officers working a particular housing unit during recreation recall are simply directed "to stand in a position to supervise the movement" of the inmates. ECF No. 30 Ex. 1 *2.

tight quarters" in the hallway than in the unit itself. In such a situation, it seems a more reasonable exercise of the C/O's duty to protect all inmates from violence that the C/O step into the corridor, rather than remain in the housing unit. Prison personnel have the duty to protect all prisoners, and not simply the duty to protect the plaintiff individually from unforeseeable attacks. In order to best protect all prisoners, it is reasonable to position oneself in the area of greatest concentration of inmates. Without a reason to believe it necessary to pay special attention to the plaintiff, the C/O acted reasonably in positioning himself in the area of highest traffic.

Finally, because the C/O had no reason to know of a heightened risk of an altercation at the time of the incident, without any evidence to show that the C/O witnessed or had reason to know that Inmate C entered the housing unit or that he witnessed or had reason to know that Inmate C was armed, the plaintiff cannot create a genuine issue of material fact as to the C/O's negligence in this regard. Without such a showing, the plaintiff again cannot show that the C/O should have recognized the risk of violence. Accordingly, the plaintiff has failed to create a genuine issue of material fact as to whether the C/O breached the duty that he owed to the plaintiff. This Court must thus decline to adopt the magistrate judge's recommendation that the defendant's motion to

11

dismiss or, in the alternative, motion for summary judgment be denied.[5] The defendant's motion for summary judgment is granted.

## V. Conclusion

For the reasons set forth above, this Court, after a de novo review, DECLINES to adopt and affirm the ruling of the magistrate judge. Accordingly, the defendant's motion for summary judgment is GRANTED. The defendant's motion to dismiss is DENIED AS MOOT. The plaintiff's complaint is thus DISMISSED WITH PREJUDICE. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

---

[5]Because this Court finds that the plaintiff has failed to create a genuine issue of material fact with regard to a breach of any duty, this Court does not reach the issues of proximate cause or the plaintiff's comparative fault.

DATED:        September 12, 2012

                                          /s/ Frederick P. Stamp, Jr.
                                          FREDERICK P. STAMP, JR.
                                          UNITED STATES DISTRICT JUDGE